### GONZALES & AL. vs. SANCHEZ & WIFE.

APPEAL from the court of the second district.

MARTIN, J., delivered the opinion of the court. In 1777 the Spanish government granted the premises to the father of Mrs. Sanchez, and in 1787 he made a verbal sale of them to Andrew Vega, and received the price; Andrew Vega and his son Anthony possessed and cultivated the premises in the life time of the vendor.

Andrew died soon after, and his son continued in possession; and in 1789 married Andrea Paballico, now Mrs. Gonzales.

An ordinance of a Spanish governor, in 1770, of which neither the original nor a copy can be had, requiring all sales of land to be made before a notary, when no authority in the governor is shown to change the general law of the land, and when the super. court of the late territory refused to recognise it, will not now be regarded.

About this time Mrs. Sanchez's father died, she then being six or seven years of age, his wife having died before him.

Anthony and Andrea Vega had two children, viz. Anthony, junior, (now deceased, and represented by his two minor children (Anthony and Mary) and Rietta, now twenty-two years of age.

Anthony, the father, kept possession and cultivated the premises till his death, which happened a few years before 1796.

His widow, having married Gonzales, made an inventory of his estate, on the eleventh of January 1796, in which the premises were included, and valued, with the improvements, at $250: the estate of her first husband was placed in the hands of her second. He and her, and her daughter Rietta continued to, and still dwell on the premises.

In 1820 the present defendants brought suit against Gonzales, for the premises in his possession, which they claimed as part of the estate of Mrs. Sanchez's father, in which they succeeded, (11 *Martin*, 207) and obtained a writ of possession; and Mrs. Gonzales, as widow of Anthony Vega, senior, Rietta, as his daughter, and the widow of Anthony

Vega, junior, as tutrix of his two children,
opposed the execution of the writ, and obtained an injunction.

Sanchez and wife, now defendants, in their answer claimed title; and in an amended one denied that the present plaintiffs had the actual possession of the premises. The injunction was dissolved and the plaintiffs appealed.

Our attention is first drawn to a bill of exceptions taken to the opinion of the district judge, in rejecting evidence of the verbal sale. The introduction of the evidence was opposed on the second ground, that by a law of the *Nueva Recopilacion*, 9, 17 and 10, sales of real estates are required to be made before a notary; and by an ordinance of Unzaga, a like provision was introduced, and verbal and *sous seing privé* sales of land are prohibited.

The law of the Recopilacion cited, is avowedly and expressly a fiscal law, enacted for facilitating the collection of a duty, *alcavala*; and as the province of Louisiana was exempt from that duty, the law was never considered as extending to it.

The ordinance of Unzaga is a document of which neither the original nor any copy are

East'n. District. now extant.  The powers of the governors of
June, 1826.      the Spanish American colonies are detailed
GONZALES&AL in the laws of the Indies ; and from no part of
vs.
SANCHEZ & AL. this code does it appear that Unzaga was
vested with authority to alter the law of
the land in this respect.  By *Partida*, 5, 5, 6,
sales may be in or without writing.  The
governors of Louisiana were, however, in
many instances, vested with ample legisla-
tive powers, often given them by the royal
instructions.  Hence when any act of theirs,
not ostensibly within their legal powers, has
been recognised and acted upon by courts of
justice, this tribunal has presumed it was au-
thorised by the king's special order.  *Rogers*
vs. *Bresler*,  3 *Martin*, 665.

Under the Spanish and territorial govern-
ments, till the adoption of the civil code,
which recognises sales of land under private
signatures, such sales were carried into effect;
the law of the Recopilacion, for the reasons
given,  not being considered as applicable to
the country.  As to the ordinance of Unzaga, it
does not appear to have ever been consider-
ed of any legal validity, and the superior
court of the late territory, in the case of
*Phillip* vs. *André*, totally disregarded it.  It is

now too late to give it effect for the first time, to the overthrow of titles, hitherto undisturbed. We think the judge erred in rejecting the evidence.

It is therefore ordered, adjudged, and decreed that the judgment be annulled, avoided, and reversed, and the case remanded, with instructions to the district court to admit the evidence of the verbal sale.

*Derbigny* for the plaintiffs, *Workman* for the defendants.